UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SHAYLA ARCHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:21-cv-338 |
| | ) |
| JAY-RANDOLPH | ) |
| DEVELOPMENTAL SERVICES, INC, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

### COMPLAINT AND DEMAND FOR JURY TRIAL

### I. NATURE OF THE CASE

1. Plaintiff, Shayla Archer ("Archer" or "Plaintiff"), by counsel, brings this action against Defendant, Jay-Randolph Developmental Services, Inc. ("Defendant"), alleging a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq*.

### II. PARTIES

2. Archer is a resident of the State of Indiana, who at all times relevant to this action resided within the geographical boundaries of the Northern District of Indiana.

3. Defendant routinely conducts business within the geographical boundaries of the Northern District of Indiana.

### III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. § 1343; and 42 U.S.C. §2000e-5(f)(3).

5. Defendant is an "employer" as that term is defined by 42 U.S.C. §2000e(b).

6. Archer was an "employee" as that term is defined by 42 U.S.C. §2000e(f).

7. Archer satisfied her obligation to exhaust her administrative remedies having timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission against Defendant alleging discrimination based on race. The EEOC issued Archer her Notice of Suit Rights, and Archer timely files this action.

8. A substantial part of the events, transactions, and occurrences relevant to this lawsuit arose within the geographical environs of the Northern District of Indiana; thus, venue is proper in this Court.

### IV. FACTUAL ALLEGATIONS

9. Archer is Black, Hispanic, and Native American.

10. Archer began working for Defendant on or about July 8, 2019, as a Direct Services Provider/Direct Support Professional ("DSP").

11. At all times, Plaintiff met or exceeded Defendant's legitimate performance expectations.

12. At the time of her employment, Plaintiff was the only Black employee at her facility. From the outset of her employment, she was subjected to inappropriate, racially charged comments about her body and the color of her skin. This harassment includes, but is not limited to, the following:

> a. Plaintiff was mocked with regards to her clothes, hair, children, marriage, taste in music, and the shape of her body. She was called "trashy," "ghetto," and "scary" by her coworkers. She was told by a coworker that she was "one of the good ones," referring to Plaintiff's race as a whole;
>
> b. In November of 2019, Plaintiff was present in the room when an employee, Haley Bower ("Bower"), who is white, made an inappropriate sexual remark about Plaintiff and one of the clients at JRDS. Plaintiff did not immediately recognize the nature of the comment, but as soon as she realized it fell under the category of sexual harassment, she reported the comment to the current Home Manager,

  Melissa Jones. Plaintiff was written up for not reporting Bower's comment in a timely manner. The Head of Human Resources, Annie Simmons ("Simmons"), who is white, agreed that Plaintiff, by reporting the comment as soon as she realized it was harassment, had reported the comment in a timely manner. The warning remained on Plaintiff's record, but any allegations against Bower were dropped; and

  c. Lori Walker ("Walker"), who is white, told other employees that if she and Plaintiff were placed on the same shift, "blows [would] be thrown". Plaintiff never antagonized Walker. Additionally, Walker would argue with Plaintiff in front of clients and interfere with Plaintiff's ability to work. This behavior was reported to Alexis Gahret ("Gahret") and Simmons, but Defendant ignored the reports, and no remedial action was taken.

13. Gahret, who is white, was hired as the Home Manager in or about April 2020 and, over time, began harassing Plaintiff. She stated that Plaintiff was not allowed to take her vacation time approved by the previous home manager. Gahret would not give Plaintiff a reason. Plaintiff was informed that if she proceeded to take her approved time off, she would not have a position to return to.

14. Plaintiff asked Simmons why she was not allowed to take her vacation time, and Simmons would not give a reason. No employee outside of Plaintiff's protected class had pre-approved vacation time denied without reason to Plaintiff's knowledge.

15. On or about May 31, 2020, Plaintiff emailed Jim Sinclair ("Sinclair"), Executive Director and who is white, and several other department leads asking that they allow her to take her vacation time. Plaintiff raised the issue that she was being treated differently than people outside of her protected class due to her race, and that she deserved to still have a position when she came back.

16. On or about June 1, 2020, Sinclair informed Plaintiff that she was allowed to take

her vacation and acted surprised that no one had told her.

17. On or about June 2, 2020, Plaintiff asked Sinclair if she could set up a meeting with him to discuss how she was being treated. Sinclair set up a meeting for the next day. During this meeting, Plaintiff expressed how she was experiencing racist remarks and treatment from her coworkers and the affect it was having on her mental health. Sinclair failed to take any remedial action and instead told her to speak to HR.

18. After Plaintiff made her complaints to Sinclair, Defendant began retaliating against Plaintiff. This retaliation included, but is not limited to, the following:

    a. The same day, Plaintiff told Garhet that her vacation had been approved by Sinclair. In response, Garhet suspended Plaintiff, claiming Archer's name was involved in another employee's suspension;

    b. On or about June 2, 2020, Plaintiff was called into a meeting, given a written warning, and was suspended for alleged verbal abuse that had occurred the month before. In May of 2020, Plaintiff was talking to a client who was hard of hearing and refused to use her hearing aids. This client had requested repeatedly that Plaintiff increase her volume so that the client could hear what she was saying. It is written in the client's treatment plan that the client refused to use her hearing aids and asked to be communicated with at a higher volume. Accordingly, Plaintiff raised her volume, and Walker, overhearing, reported Plaintiff to HR for verbal abuse. Walker later approached Plaintiff to confess she had reported the incident and acknowledge that Plaintiff was not being abusive;

    c. In or about June 2020, Simmons called Plaintiff into a meeting. Simmons dismissed Plaintiff's reports of harassment and explained that it was all a communication error, and if Defendant held diversity training, the situation would improve. Despite Simmons' promises to look into diversity training, no training occurred during Plaintiff's employment and Defendant's treatment of Plaintiff did not improve;

    d. In or about June 2020, Plaintiff reported Walker's continued harassment to Gahret, who stated she didn't believe Plaintiff. Courtney McDonough confirmed Walker was harassing Plaintiff, and Gahret still refused to believe either of them. When Plaintiff reported this to Simmons, Simmons stated that there was nothing

she could do;

e.      When Plaintiff experienced an injury, Simmons asked her to move to a different house. Plaintiff stated that she did not want to change shifts or move to a different house. Plaintiff spoke to Gahret about the situation and was informed by Gahret that they "did not know what to do with" her and that Plaintiff needed to change to third shift or work at another location. Plaintiff stated that she could not make that change, as she had children to care for. Gahret then called her an inconvenience. When Plaintiff informed Simmons of the comment, Plaintiff was told to brush it off;

f.      Immediately following Plaintiff's refusal to switch to third shift, Gahret scheduled Plaintiff for third shift without her approval or knowledge. She also scheduled Plaintiff to work for twelve hours on July 4, 2020. Plaintiff was the only individual on day shift scheduled for a 12-hour shift, while employees outside of her protected class were given a partial shift and allowed to celebrate the holiday;

g.      Gahret continued to change Plaintiff's schedule frequently and inform everyone of the changes except for Plaintiff. When Plaintiff raised the issue that others were not subjected to similar schedule changes, Simmons said she needed to "let it go." No individuals had changes made to their schedules without their consent/knowledge;

h.      In July 2020, Plaintiff was pulled into a meeting with Mindy [*Last Name Unknown*] ("Mindy"), Jan Bruggerman ("Bruggerman"), and Simmons, all of whom are white. Plaintiff was accused of putting a diabetic client's life in danger by not giving the client quick carbs. On the shift in question, Plaintiff was performing med passes. It was Defendant's protocol never to stop med passes for any reason. However, in response to the client's request, Plaintiff paused to text the client's head nurse. After the client's nurse gave Plaintiff the okay, Plaintiff gave the client her quick carbs. Shortly after, Plaintiff went home. Defendant proceeded to accuse Plaintiff of neglect and abuse because she did not administer the quick carbs immediately. Plaintiff pointed out that Louisa Trissel, a white DSP, had also been on shift and unoccupied at that time. Trissel did not receive any sort of reprimand for purported abuse and neglect, but Plaintiff was suspended; and

i.      Plaintiff informed Mindy, Bruggerman, and Simmons that Gahret was harassing Plaintiff based on her race and that she did not feel safe around her. Gahret was consequently invited into every disciplinary meeting that Plaintiff was

called into.

19. In or about early July 2020, Plaintiff called Sinclair and informed him that she no longer felt safe at work. No remedial action was taken.

20. On July 13, 2020, Plaintiff was called into another meeting with Mindy, Bruggerman, Simmons, and Gahret. The tone of the meeting was hostile and accusatory. Plaintiff began to have a panic attack, returned the paper handed to her, and left.

21. Following her complaint in May 2020 alleging discrimination based on her race, Defendant wrote Plaintiff up and suspended her multiple times, creating a hostile environment that resulted in Plaintiff's constructive discharge on July 13, 2020.

## IV.    CAUSES OF ACTION

### COUNT I: RACE DISCRIMINATION

22. Plaintiff hereby incorporates by reference paragraphs one (1) through twenty-one (21) of her complaint.

22. Defendant discriminated against Plaintiff based on her race.

23. Defendant's actions were intentional, willful and in reckless disregard of Plaintiff's rights as protected by Title VII of the Civil Rights Act of 1964.

24. Plaintiff has suffered and continues to suffer damages as a result of Defendant's unlawful actions.

### COUNT II: RETALIATION

25  Paragraphs one (1) through twenty-four (24) of Plaintiff's Complaint are hereby incorporated.

26. Plaintiff engaged in protected activity when she complained about the racial

harassment that she was experiencing.

27. Plaintiff was retaliated against for engaging in protected activity.

28. Defendant's actions were intentional, willful and in reckless disregard of Plaintiff's legal rights.

29. Plaintiff has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

## VI. REQUESTED RELIEF

WHEREFORE, Plaintiff, Shayla Archer, respectfully requests that this Court enter judgment in her favor and award her the following relief:

1) Reinstate Plaintiff to the position, salary, and seniority level she would have enjoyed but for Defendant's unlawful actions; and/or payment to Plaintiff of front pay in lieu thereof;

2) Permanently enjoin Defendant from engaging in any employment policy or practice that discriminates against any employee on the basis of his/her race;

3) All wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

4) Compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

5) Compensatory damages for Defendant's violations of Title VII;

6) Punitive damages for Defendant's violations of Title VII;

7) All costs and attorney's fees incurred as a result of bringing this action;

8) Pre- and post-judgment interest on all sums recoverable; and

9) All other legal and/or equitable relief this Court sees fit to grant.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: /s/ Taylor Ferguson
Taylor J. Ferguson, Atty No. 35524-22
BIESECKER DUTKANYCH & MACER, LLC
144 N. Delaware St.
Indianapolis, Indiana 46204
Office:  (317) 991-4765
Facsimile:  (812) 424-1005
Email: tferguson@bdlegal.com
*Counsel for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff, Shayla Archer, by counsel, requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: /s/ Taylor Ferguson
Taylor J. Ferguson, Atty No. 35524-22
BIESECKER DUTKANYCH & MACER, LLC
144 N. Delaware St.
Indianapolis, Indiana 46204
Office:  (317) 991-4765
Facsimile:  (812) 424-1005
Email: tferguson@bdlegal.com
*Counsel for Plaintiff*